IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NICOLE M. PAGANI, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:24-cv-13320 |
| ) | |
| v. ) | The Honorable John J. Tharp Jr. |
| ) | |
| SHERIFF OF COOK COUNTY THOMAS J. ) | Magistrate Judge Jeffrey T. Gilbert |
| DART, COOK COUNTY SHERIFF'S OFFICE, ) | |
| THOMAS J. DART, in his Official Capacity as ) | |
| SHERIFF OF COOK COUNTY, and COOK ) | |
| COUNTY, as Indemnitor, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO PARTIALLY DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants Sheriff of Cook County Thomas J. Dart; Thomas J. Dart, in his Official Capacity as Sheriff of Cook County; and the Cook County Sheriff's Office (together, the "CCSO" or the "Sheriff's Office"), by and through their attorneys, Hinshaw & Culbertson LLP, and for their Memorandum of Law in Support of their Motion to Partially Dismiss Plaintiff's First Amended Complaint, pursuant to FRCP 12(b)(6), state as follows:

**I. INTRODUCTION**

Plaintiff works as a Senior Investigator for the Sheriff's Office where she investigates complaints of employee misconduct within the Sheriff's Office of Professional Review (OPR). First Amended Complaint, Dkt. 16 (FAC) ¶15.[1] Plaintiff brings this lawsuit challenging her reassignment to a different OPR investigation "squad" and her removal from a specialized Federal Bureau of Investigation (FBI) Task Force.[2] In Plaintiff's seven (7) counts against the Sheriff's

---

[1] All subsequent references to the FAC in this Motion will simply contain a paragraph sign (¶) without including the pleading name or its FAC abbreviation.

[2] Plaintiff refers to her reassignment as both a transfer and a demotion. The classification of the action as a demotion or transfer is not material for the purposes of this Motion. In attempt to avoid confusion, the reassignment from Squad 4 to Squad 3 will simply be referenced herein as the "reassignment."

Office,[3] she presents multiple theories and explanations for the reassignment and removal: gender discrimination (pursuant to Title VII and the Illinois Human Rights Act (IHRA)(Counts 1 and 3); retaliation in response to Plaintiff's internal gender discrimination complaint (pursuant to Title VII and the IHRA)(Counts 2 and 4); retaliation in response to Plaintiff's internal wage claim (pursuant to the Fair Labor Standards Act (FLSA) and the Illinois Wage Payment and Collections Act (IWPCA))(Counts 5 and 6, respectively); retaliation in response to Plaintiff's purported refusal to violate the law, and based on Plaintiff's reporting of purported illegal conduct (pursuant to the Illinois Whistleblower Act (IWA))(Count 7).

The Sheriff's Office challenges the FAC on three main grounds: 1) discretionary immunity pursuant to the Illinois Tort Immunity Act, Section 745 ILCS 10/2-201, as to the IWA count; (2) failure to exhaust administrative remedies based on the "scope of the charge," as to the Squad 3 harassment allegations under Title VII and IHRA; and (3) redundancy of parties as to all claims against the *Sheriff of Cook County Thomas J. Dart*, *Thomas J. Dart in his official capacity as Sheriff of Cook County*, and *the Cook County Sheriff's Office*.

II. <u>**ALLEGATIONS OF THE FAC**</u>

At all relevant times, Plaintiff worked within the Sheriff's OPR, and for the majority of time in OPR Plaintiff was assigned to the "Squad 4." ¶15. While in Squad 4, Plaintiff handled cases "deemed confidential" that involved "high ranking members of the Sheriff's Office." *Id*. She performed "high level criminal [*sic*] administrative and official investigations of sworn and civilian employees throughout the Cook County Sheriff's Office," including "high profile/media

---

[3] Plaintiff names four separate defendants in this action. Yet, three of the named defendants are merely different name variations of the same entity: the Cook County Sheriff's Office. This improper redundancy is addressed in Section IV.B., below.

attention cases" that involved "criminal sexual assault, introduction of contraband into a penal institution, excessive use of force, theft of government property, ghost payrolling, civil rights violations and official misconduct[.]" *Id*.

In 2019, while working in Squad 4, Plaintiff was required to pass a "background process" in order to become a Task Force Officer (hereinafter TFO) with the FBI's Public Corruption and Civil Rights Violation Squad. ¶16. In 2021, Plaintiff and other members of Squad 4 received information from a confidential informant about alleged "ghost payrolling" and other misconduct at the Sheriff's Office, which they shared with the FBI. ¶¶18, 19. This tip from the confidential informant developed into an investigation which "expanded significantly" into other areas of misconduct, spanning approximately 2.5 years. *Id*.

Plaintiff alleges she was "sworn-in" as a TFO in 2022, and received a special appointment with the United States Marshals Service. ¶16. Taking the allegations in the FAC as true, Plaintiff received benefits and opportunities as a TFO, including: FBI credentials; a covert FBI take-home vehicle and gas card; access to nearly $20,000 in reimbursed overtime; law enforcement training with the FBI; opportunities to "work on major investigations involving other governmental agencies" such as the Chicago Police Department and suburban agencies; promises to work with the FBI after retirement; and the opportunity "to establish strong working relationships with the FBI and U.S. Attorney's Office." ¶16.

Plaintiff characterizes her 2.5 year investigation referenced above as the "Squad 4 and the FBI joint investigation," ¶31, and states that her investigation "went overt" on March 23, 2022, when [Squad 4] "de-deputized" seventeen (17) CCSO sworn law enforcement officers, including four exempt employees. ¶¶22, 25. Thereafter (on the afternoon of March 23, 2022), Plaintiff notified the Sheriff's Office Chief of Staff and Chief Legal Officer about the de-deputizations, but admits

she only shared "*some of the evidence* against the de-deputized employees and the exempt rank employees" with the Chief of Staff and Chief Legal Officer. (emphasis added). ¶23.

Plaintiff's participation in the investigation continued, and as of at least October 16, 2023, Plaintiff was the only Sheriff's Office TFO. ¶¶37, 39. At around that time, Plaintiff's boss, the Executive Director of the Sheriff's OPR, asked Plaintiff for a copy of the "signed grand jury [*sic*] search warrant [*sic*] and affidavit because he needs to know exactly what information Squad 4 and the FBI had requested and what they were looking at." ¶37. Plaintiff refused to provide the requested information. ¶45. When the Executive Director asked again for the information in December of 2023, Plaintiff again refused. ¶50. Thereafter, the Executive Director informed Plaintiff that "he would be the one to communicate with the FBI going forward." ¶73. Plaintiff (the only TFO from the Sheriff's Office) was removed from the Task Force, effectively ending the program, and was reassigned from Squad 4 to Squad 3. ¶¶39, 63, 68.

Plaintiff lodged an internal gender discrimination complaint against the OPR Executive Director, claiming that he reassigned her from Squad 4 to Squad 3 and removed her from the FBI Task Force because she is female. ¶90.[4] Additionally, Plaintiff alleges that the OPR Executive Director filed an OPR complaint against Plaintiff, which Plaintiff contends is retaliatory and could lead to disciplinary action and/or termination. ¶92.

Plaintiff recently amended her Complaint to add allegations about her new/current assignment in Squad 3; none of the new allegations involve or implicate the OPR Executive Director. ¶88. Specifically, Plaintiff alleges that certain new cases assigned to her in Squad 3 have been removed,

---

[4] At one point, Plaintiff also filed a grievance against the OPR Executive Director for overtime pay violations. ¶80.

and that (unidentified and unspecified) "unreasonable demands" have been placed on her "that other investigators were not held [*sic*] to…" ¶88.

As part of Plaintiff's IWA claim, Plaintiff asserts that she reported "illegal conduct" when she told the FBI about her concerns that the OPR Executive Director (Plaintiff's boss) was sharing information about the "joint investigation" with some of the most senior members of the Sheriff's Office, including the Sheriff's Office's Chief Legal Officer, the Chief of Staff, and the officeholder. ¶¶31, 23 (Chief Legal Officer), 21 (Chief of Staff).

### III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face," such that the plaintiffs have "nudged their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the Rule 12(b)(6) stage, the court does not assume the truth of a complaint's legal conclusions. *Castro v. Dart*, 483 F. Supp. 3d 564, 572 (N.D. Ill. 2020). In considering a motion to dismiss under Rule 12(b)(6), district courts may consider any facts set forth in the complaint that undermine plaintiff's claims. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

### IV.   ARGUMENT

   A. The IWA Claims should be Dismissed Because the Tort Immunity Act Shields the Defendants from Liability for their Discretionary Acts.

Pursuant to the Illinois Tort Immunity Act ("TIA"), the Sheriff's Office is immune from liability for Plaintiff's IWA count because the decisions to remove, reassign, or file a complaint against Plaintiff are discretionary policy decisions. The purpose of the TIA is to protect "local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1. Accordingly, the TIA shields local public entities and employees from liability where their alleged actions involve a determination of policy and an exercise of discretion. *See*

Sections 2-201 and 2-109. The relevant portion states: "[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. Correspondingly, where a public employee cannot be liable, its employing local public entity cannot be liable. 745 ILCS 10/2-109.

Here, Plaintiff alleges that she was removed from the specialized FBI TFO program, reassigned from the most sensitive investigative unit at the Sheriff's Office, and the subject of an OPR complaint by the Executive Director of the unit. She claims those actions occurred because she reported CCSO misconduct and/or refused to share information from her "joint FBI investigation" with the Executive Director of OPR. ¶¶31, 45. Yet, the law makes clear that the decisions to remove, reassign or investigate an employee are protected by 2-201 of the Tort Immunity Act, because they are inherently discretionary policy decisions for which discretionary immunity applies. Viewed against the backdrop of the TIA and the caselaw that interprets it, dismissal of Plaintiff's IWA count is warranted.

For immunity to apply, the governmental entity must show that it engaged in both the determination of policy and the exercise of discretion in taking the employment action. *Graham v. Bd. of Educ.*, 2019 U.S. Dist. LEXIS 7579, *14 (N.D. Ill. Jan. 16, 2019). In application, a "policy determination" reflects the balancing of competing interests to make a judgment call as to what solution best serves those interests, and a "discretionary act" involves the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner the act should be performed. *Id*.

"Municipal decisions regarding the hiring, firing, discipline, and supervision of employees are discretionary policy decisions," *Id*. (citing cases). Courts routinely dismiss complaints based on

6

such municipal decisions pursuant to TIA Section 2-201. *Rufus v. City of Chi.*, 2021 U.S. Dist. LEXIS 53364, at *7 (March 22, 2021)(Judge J. Blakey)(citing cases). In *Rufus*, a City of Chicago (City) employee filed a whistleblower lawsuit under the IWA, claiming that the City refused to promote him to a foreman role because he made several complaints to the City's Inspector General about misconduct. *Id*. at *6. The City moved to dismiss pursuant to Rule 12(b)(6), arguing that Section 2-201 barred the plaintiff's claim. The court agreed, and in granting the City's motion, the court found that section 2-201 "plainly applies here," and that the decision not to promote the employee was an "inherently discretionary policy decision." *Id*. at 7-8.

Plaintiff's own pleading supports the application of Section 2-201 immunity and the policy-based, discretionary nature of the CCSO's actions. As alleged in the FAC, the change in "point-person" for substantive information sharing between the top County law enforcement agency (the Sheriff's Office) and the top federal law enforcement agency (the FBI); the assignment of investigator to (and from) OPR's most sensitive investigative unit; and the filing of an OPR complaint, implicate obvious and broader policy principles that require the type of discretionary decision-making unique to the Sheriff's Office and to that determination.

At issue here is the decision to re-set policies as to substantive information-sharing between the Sheriff's Office and FBI, which would effectively stop the Sheriff's participation in the TFO program. As asserted in the FAC, Plaintiff was the only TFO, and after her removal, the FBI interacted with OPR through the OPR Executive Director. ¶¶ 39, 73. The FBI Task Force was a specialized partnership between the CCSO and the FBI, where a CCSO employee worked as a TFO on federal cases with federal agents. ¶16. Yet, and fundamentally, the determination as to the liaison between the two agencies is a policy decision. Certainly, there is no requirement that the Sheriff's Office communicate with the FBI in a certain way, nor is there a mandate that a local law

enforcement agency must devote its limited resources to staff a federal Task Force. Such an evaluation requires the balancing competing interests to ultimately determine how to develop and maintain effective investigators and, more generally, the most effective internal investigation department.

Here, the Sheriff's Office decision to overhaul its information sharing policy with the FBI, so that communication with the FBI would flow through the OPR Executive Director (effectively ending the TFO program), is an inherent policy decision that involves weighing all aspects of the partnership (including those identified by Plaintiff in Paragraph 16 of the FAC, such as strong working relationships with the FBI and U.S. Attorney's Office, access to FBI training programs, and opportunities to work on major investigations involving other governmental agencies) with the results of the program, resources spent and the extent of accountability by the CCSO employee participating as a TFO.[5] (*See, e.g.,* ¶51 for the results of the program, ¶18 for the length of the investigation, as well as the notable absence of any reference to federal criminal charges in the FAC). The change in information sharing and re-consideration of the program was discretionary, and based on the unique needs of the Sheriff's Office, lacking any mandated direction or path.

In addition to Plaintiff's removal as a TFO, her transfer/demotion from a sensitive investigative squad in the internal affairs department (OPR) likewise reflects a discretionary policy decision. Indeed, the decision to re-assign Plaintiff, as alleged, was made in the context of the ending of the TFO program and evaluating the structure of the OPR Department. The determination about who works on the most sensitive criminal investigations in OPR is not done in a ministerial or

---

[5] It is reasonable to conclude that the action by Plaintiff and Squad 4 in "de-deputizing" nearly 20 CCSO law enforcement officers (and keeping that plan a secret from the Chief of Staff and Chief Legal Officer until their "de-deputization operation" was completed), as alleged in ¶¶22, 23, 25, may have contributed to some of the CCSO's "accountability" concerns with the TFO program.

mandatory way. There is significant discretion in determining the most appropriate investigators to work in the unit responsible for building cases that are criminally charged and result in convictions, because, particularly in the corrections environment, the stakes are extraordinarily high when faced with accusations of serious criminal behavior such as criminal sexual assault, allowing contraband into the jail, excessive force, theft of governmental property or any of the other crimes identified by Plaintiff.

The third and final employment action at issue in Plaintiff's IWA count is the OPR Complaint allegedly filed by the Executive Director of OPR against Plaintiff. ¶84. The decision of the leader of the Sheriff's internal affairs department (OPR) to file a complaint against one of his senior investigators is a policy decision that requires the balancing of competing interests and a judgment call as to the best option for moving the Department forward. On one side, there is the concern about the turmoil, distraction and resentment by members of Squad 4 (and others in OPR) to the existence of an OPR Complaint against their senior investigator; yet, on the other side, there are benefits to collecting the information and evaluating the Plaintiff's actions to identify learning points and corrective action, and to assess potential repercussions in a methodical way, with the aim to improve the Department overall. In addition to a policy decision, the filing of an OPR Complaint is a discretionary action, in that the OPR Executive Director could have handled the situation in any number of ways from informal discussions with Plaintiff to counseling or any number of other steps. When, exactly, a situation rises to the level of warranting the additional resources that must be devoted to a formal inquiry is a multi-faceted judgment call that goes to the heart of this particular immunity.

    B.    <u>Claims Against Defendants Sheriff of Cook County Thomas J. Dart and Thomas J. Dart, in his Official Capacity as Sheriff of Cook County (Counts I–VII) Should Be Dismissed as Redundant to the Claims Against the CCSO</u>.

Plaintiff purports to sue a total of four separate defendants in this action. However, three of the named defendants actually are the same entity, making them redundant to one another and ripe for dismissal. Where a plaintiff sues a governmental employee in his "official capacity," as well as the governmental entity itself, courts dismiss actions against the employee in his "official capacity," as redundant to claims brought against the governmental entity. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008); *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007); *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 381-82 (7th Cir. 1988); *Moss v. Singleton*, 110 F. Supp. 3d 876, 881 (N.D. Ill. 2015) (court dismissed claims against Sheriff Dart in his official capacity because it was duplicative of claims against the Sheriff's Office).

Here, Plaintiff twice names the same governmental employee in his "official capacity" as a defendant in this action,[6] in addition to naming the governmental entity itself as a defendant. Pursuant to the above caselaw, there effectively is no difference between the three entities as defendants in this matter. As such, the two iterations of the Cook County Sheriff in his official capacity should be dismissed with prejudice as redundant to the claims against the Cook County Sheriff's Office, and the only remaining Sheriff defendant in this lawsuit should be the Cook County Sheriff's Office.

---

[6] Plaintiff is not explicit about whether she intends to sue the Sheriff in his official capacity by naming "Sheriff of Cook County Thomas J. Dart" as a defendant. However, by using the employee's official governmental title, it is fair to interpret that Plaintiff intends to sue the officeholder in his official capacity, and not in his individual/personal capacity. As further support for that conclusion, Plaintiff identifies this defendant as her "employer" in the FAC on seven occasions, which would not be possible if Plaintiff intended to sue the officeholder in his individual capacity. ¶¶8-12, 14-15.

    C.    <u>The Allegations About the Plaintiff's New OPR Squad Should Be Dismissed Because they are Outside the Scope of the Predicate Charge</u>

The Sheriff's Office moves to dismiss the allegations contained in paragraph 88 of the FAC because these new claims are beyond the scope of Plaintiff's underlying IDHR/EEOC charge. (See Exhibit A, Plaintiff's IDHR/EEOC Charge)(hereinafter the "Charge").[7] It is well settled that allowing a lawsuit to include allegations outside the scope of the predicate charge would frustrate the EEOC's investigatory and conciliatory role and deprive the charged party of the required notice of the charge. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Therefore, a plaintiff generally cannot bring Title VII claims in her lawsuit that are not within the scope of the charge filed with the IDHR/EEOC. *White v. Hy-Vee, Inc.*, 2022 U.S. Dist. LEXIS 252108, at *12-14 (C.D. Ill. May 16, 2022); *Cheek*, 31 F.3d at 500.

An exception to the above referenced rule applies if the plaintiff's claims are "like or reasonably related to" the allegations of the charge and are expected to grow out of such allegations. *Flores v. Board of Trustees of Community College District No. 508*, 103 F. Supp. 3d 943, 949-50 (N.D. Ill. 2015). At a minimum, "like or reasonably related" claims must ***describe the same conduct and implicate the same individuals***. *White*, 2022 U.S. Dist. LEXIS, at *14 (emphasis added). See also, *Sitar*, 344 F.3d 720, 726-27 (7th Cir. 2003) (holding that a retaliation claim in an EEOC charge was not reasonably related to sex discrimination and harassment claims involving separate incidents, people, conduct and time frames).

Plaintiff's Charge includes discrete claims of sex discrimination and retaliation for reporting sex discrimination, all alleged against the OPR Executive Director. Exh. A. Specifically, the

---

[7] Courts may rely on documents referenced in the pleading if they are central to the claim, including the underlying EEOC/IDHR charge, which determines the proper scope of a Title VII claim. *Bogie*, 705 F.3d at 609. The CCSO attaches the Charge as Exhibit A to this responsive pleading because Plaintiff did not attach it to any of her pleadings.

Charge alleges that pursuant to the IHRA and Title VII, the OPR Executive Director transferred Plaintiff from Squad 4, removed her as a TFO, and filed an OPR complaint against her because of his gender animus against females. IHRA: pg. 14, ¶¶29, 30; Title VII: pg. 17, ¶¶29, 30. It also alleges that the OPR Executive Director took action pursuant to the IHRA and Title VII in filing an OPR complaint against Plaintiff in retaliation for Plaintiff's filing of a sex discrimination complaint against the OPR Executive Director. IHRA: pg. 20 ¶30, pg. 21 ¶32; Title VII: pg. 24 ¶29, pg. 25 ¶32.

The new allegations in Paragraph 88 of the FAC are not within the scope of Plaintiff's Charge, nor are they "like or reasonably related" to the claims alleged in the Charge. Paragraph 88 exclusively focusses on the "harassment" Plaintiff experienced in her new Squad, including the apparent removal of certain cases as well as unidentified "unreasonable demands" that were placed on her "that other investigators were not held [*sic*] to…" ¶¶31, 88.

Plaintiff's Charge focuses on the OPR Executive Director's alleged sex-based conduct and retaliatory animus, but he is not implicated anywhere in the new "harassment" allegations in paragraph 88. The facts in paragraph 88 involve an entirely different assignment (Squad 3 instead of Squad 4), entirely different conduct ("harassment" by making unreasonable demands and removing new cases assigned to her in her current unit), in a different timeframe (in her new/current assignment, not when she was assigned to Squad 4), by a different alleged perpetrator (not the OPR Executive Director named in the Charge).

Nowhere in Plaintiff's exhaustive 27-page Charge does the Plaintiff allege that she experienced harassment in Squad 3. The Charge does not reference any conduct she experienced specific to her new Squad, nor does it allege any differential treatment of Plaintiff, as compared to other

investigators. Viewing the Charge as a whole, it is based entirely on alleged conduct *leading up to her* responsibilities in Squad 3, not conduct that occurred during the assignment.

The Charge does not reasonably put the CCSO Defendants on notice that Plaintiff sought to assert claims based on events occurring while assigned to Squad 3, with different actors, and different conduct. Plaintiff was represented by counsel when she filed her Charge, and as such, the Court should extend no leniency when determining whether the Charge and the allegations in paragraph 88 of the FAC are reasonably related. To the extent Plaintiff intends to assert that the Sheriff's Office violated Title VII or the IHRA based on any "continuing harassment," including the conduct described in paragraph 88, those allegations should be dismissed.

WHEREFORE, Defendants respectfully request that this Honorable Court grant their Partial Motion to Dismiss the First Amended Complaint against the CCSO and enter an order dismissing the "Cook County Sheriff Thomas J. Dart" and "Thomas J. Dart in his official capacity as the Sheriff of Cook County," from this case with prejudice; dismissing the IWA Claim (Count 7) with prejudice and dismissing the allegations in paragraph 88 with prejudice, and for all other relief that this Court deems equitable and just.

    Respectfully submitted,

    HINSHAW & CULBERTSON LLP

    /s/ V. Brette Bensinger
    One of Defendant's Attorneys

Robert T. Shannon
V. Brette Bensinger
Amanda Tzivas
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Phone: 312-704-3000

09016\324484171.v1